

1  Timothy D. Thurman, State Bar No. 216048
2  TRINITY LAW ASSOCIATES, Inc.
3  3470 Wilshire Blvd., Suite 930
   Los Angeles, California 90010
4  Tel: (213) 384 9000; Fax: (213) 402 3262

5  Attorneys for Plaintiff,
6  KIMBERLY CHOI

7

8           **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11                    **CV09-02915 AHM** (RCx)

12 KIMBERLY CHOI, an individual,        )  CASE NO.:
                                        )
13              Plaintiff,              )  **COMPLAINT FOR:**
                                        )
14              v.                      )
                                        )  1.  **VIOLATION OF**
15                                      )      **TRUTH IN LENDING**
16 INDYMAC BANK, F.S.B., a              )      **ACT, 15 U.S.C. § 1601**
   Federally Chartered Savings Bank;   )  2.  **VIOLATION OF REAL**
17 and DOES 1-10, inclusive,           )      **ESTATE SETTLEMENT**
                                        )      **PROCEDURES ACT**
18              Defendants.             )      **(RESPA), 12 U.S.C. §**
                                        )      **2601**
19                                      )  3.  **VIOLATION OF CAL.**
20                                      )      **FINANCIAL CODE §**
21                                      )      **4970**
                                        )  4.  **FRAUD**
22                                      )  5.  **BREACH OF**
23                                      )      **CONTRACT**
                                        )  6.  **BREACH OF THE**
24                                      )      **IMPLIED COVENANT**
25                                      )      **OF GOOD FAITH AND**
26                                      )      **FAIR DEALING**
                                        )  7.  **VIOLATION OF**
27                                      )      **CALIFORNIA CIVIL**
28

                            1
         **COMPLAINT FOR DAMAGES AND RECISSION**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

CODE § 2923.6
8.   **VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5**
9.   **VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CIVIL CODE § 51 (Discrimination)**
10.  **VIOLATION OF CIVIL RIGHTS ACT OF 1991, 42 U.S.C. § 1981 (Discrimination)**
11.  **VIOLATION OF CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983 (Discrimination)**
12.  **VIOLATION OF FAIR HOUSING ACT, 42 U.S.C. § 3601 (Discrimination)**
13.  **VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000d (Discrimination)**
14.  **VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT (ECOA), 15 U.S.C. § 1691 (Discrimination)**
15.  **VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE §§ 17200 and 17500**
16.  **QUIET TITLE**
17.  **DECLARATORY RELIEF**

PLAINTIFF'S COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, KIMBERLY CHOI (referred to hereinafter as "Plaintiff") and herein complains and alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff institutes this action for actual and compensatory damages, statutory damages, rescission, punitive damages, attorney fees, and costs of this action against Defendants for violations of the following federal statutes and state law claims:

    a.  Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, (hereinafter TILA), and Regulation Z, 12 C.F.R. § 226 *et seq.*;

    b.  Real Estate Settlement Procedures Act,  12 U.S.C. § 2601 *et seq.*, (hereinafter RESPA), and Regulation X, 24 C.F.R. § 3500 *et seq.*;

    c.  California Financial Code § 4970 *et seq.*;

    d.  Fraud;

    e.  Breach of Contract ;

    f.  Breach of the Implied Covenant of Good Faith and Fair Dealing;

    g.  California Civil Code § 2923.6

    h.  California Civil Code § 2923.5

    i.  Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

    j.  Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.*;

    k.  Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.*;

    l.  Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

    m. California Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

    n.  Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*;

    o.  California Business & Professions Code §§ 17200 and 17500 *et seq.*;

    p.  Quiet Title;

    q.  Declaratory Relief;

**TRINITY LAW ASSOCIATES**
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

2.    Plaintiff only recently discovered the violations of these laws. As Plaintiff does not speak English as a first language, and was never provided any of the loan transaction documentation in her native language, Plaintiff did not have reasonably discovered these violations despite due diligence. As such, this action is timely as any and all applicable statutes of limitations were equitably tolled pursuant to state and/or federal law.

.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court is invoked under a federal question pursuant to the federal statutes outlined above and 28 U.S.C. §§ 1331 and 1337.

4.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.    This Court has jurisdiction to render the declaratory judgment Plaintiff seeks pursuant to 28 U.S.C. § 2201.

6.    Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because: (i) the real property exists within said district, (ii) the Defendant has or is doing business within the district; and (iii) further, the *pendente* causes of action pursuant to California law concerns real property within the County of Los Angeles within this district.

## PARTIES

7.    Plaintiff KIMBERLY CHOI is an individual and at all times relevant hereto was a resident of the City of Los Angeles, County of Los Angeles, State of California.

8.    Defendant INDYMAC BANK, F.S.B., is a federally chartered savings bank organized and existing under the laws of the United States conducting business as a financial institution in the State of California [hereinafter referred to as "BANK 1"].

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

9.     Plaintiff is not aware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names.  Each of said fictiously named Defendant is responsible in some manner for the violations of law herein alleged.  Plaintiff will amend this complaint to add the true names of the fictiously named Defendants once they are discovered.  Whenever reference is made in this complaint to "Defendants," such reference shall include Does 1 through 10.

10.     When reference in this complaint is made to any act or transaction of a defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that said defendant and its owners, officers, directors, agents, employees, or representatives did or authorized such acts while engaged in the management, direction, or control of the affairs of Defendants and while acting within the scope and course of their duties.

11.     Whenever in this complaint reference is made to any act of any individual defendant, such allegation shall be deemed to mean that said defendant is and was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform the acts so alleged on behalf of every other defendant herein.

12.     Whenever in this complaint reference is made to any act of Defendants, such allegation shall be deemed to mean the act of each defendant acting individually and jointly with the other Defendants named in that cause of action.

## COMMON FACTUAL ALLEGATIONS

13.     On or about February 28, 2007, (referred to hereinafter as "Closing Date 1") Plaintiff entered into a consumer credit transaction with BANK 1 by obtaining a $560,000 mortgage loan secured by Plaintiff's principal residence, a real property commonly known as 1637 West 266th Street, City of Torrance, County of Los Angeles, State of California (hereinafter referred to as the "Property").  A copy

5

1  of the Note and/or security agreement is attached hereto as Exhibit A, and is hereby

2  incorporated by reference.

3      14.    The terms of the finance transaction with BANK 1 are not clear or

4  conspicuous, nor consistent, and include reference to fixed/adjustable rate note

5  interest only period, and other rates and fees for which BANK 1 either did not

6  disclose, make clear or had not included as part of the finance charge.

7      15.    Plaintiff alleges that Defendants, and each of them, neither explained

8  the workings of the entire mortgage loan transaction, how the rates, finance charges,

9  costs and fees were computed, nor the inherent volatility of the loan product(s)

10  provided by Defendants.

11

12                          **COUNT I**

13           **VIOLATION OF TRUTH IN LENDING ACT**

14                   **[15 USC § 1601]**

15                      **(BANK 1)**

16      16.    Plaintiff repeats and realleges each and every allegation contained in

17  the above paragraphs and incorporates the same as though fully set forth at length.

18      17.    At all relevant times, Defendants were "creditors" as that term is

19  defined in § 103 of the TILA, 15 U.S.C. § 1602, and § 226.2(a)(17) of Regulation Z,

20  12 C.F.R. § 226.2(a)(17), and therefore are required to comply with the applicable

21  provisions of the TILA and Regulation Z, and other applicable laws.

22      18.    The transaction which is the subject of this lawsuit are subject to the

23  right of rescission because either the loan was a non-exempt loan under TILA for

24  purposes of rescission, or Defendants otherwise treated the transaction as

25  rescindable by, among other things, providing Plaintiff with TILA disclosures

26  and/or the right to cancel.

27      19.    On information and belief, in the course and conduct of offering and

28  extending credit, Defendants violated the requirements of the TILA and Regulation

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

Z, and other applicable laws, in one or more of the following ways within one year of the Closing Date:

a. Failing to identify the creditor in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(a) of Regulation Z, 12 C.F.R. § 226.18(a);

b. Stating a rate of finance charge without disclosing the "annual percentage rate" or "APR" in violation of § 144 of the TILA, 15 U.S.C. § 1664, and § 226.24(b) of Regulation Z, 12 C.F.R. § 226.24(b);

c. Failing to make required TILA disclosures before consummating a consumer credit transaction in violation of §§ 121 and 128 of the TILA, 15 U.S.C. §§ 1631 and 1638, and §§ 226.17 and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17 and 226.18;

d. Failing to make required TILA disclosures in the required manner and form before consummating a consumer credit transaction in violation of §§ 121 and 128 of the TILA, 15 U.S.C. §§ 1631 and 1638, and §§ 226.17 and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17 and 226.18;

e. Failing to timely make or correct certain "good faith" disclosures in violation of § 226.19 of Regulation Z, 12 C.F.R. § 226.19;

f. Understating the disclosed finance charge in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(d) of Regulation Z, 12 C.F.R. § 226.18(d);

g. Overstating the amount financed in violation of § 128 of the TILA, 15 U.S.C. § 1638, and § 226.18(b) of Regulation Z, 12 C.F.R. § 226.18(b);

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

h.  Understating the disclosed annual percentage rate in violation of §
128 of the TILA, 15 U.S.C. § 1638, and § 226.18(e) of Regulation
Z, 12 C.F.R. § 226.18(e);

i.  Failing to disclose or accurately disclose the "payment schedule" or
the "total of payments," including but not limited to, failing to
disclose a balloon payment, in violation of § 128 of the TILA, 15
U.S.C. §§ 1638, and §§ 226.18(g) and (h) of Regulation Z, 12
C.F.R. §§ 226.18(g) and (h);

j.  Making disclosures that do not reflect accurately the legal obligation
between the parties in violation of § 128 of the TILA, 15 U.S.C. §§
1638, and § 226.17(c) of Regulation Z, 12 C.F.R. § 226.17(c);

k.  Failing to deliver to each borrower two copies of a notice of the
right to rescind that: identified the transaction; clearly and
conspicuously disclosed the security interest in the Property; clearly
and conspicuously disclosed the Plaintiff's right to rescind the
transaction; clearly and conspicuously disclosed how to exercise the
right to rescind the transaction, with a form for that purpose,
designating the address of the defendant's place of business; clearly
and conspicuously disclosed the effects of rescission; and/or clearly
and conspicuously disclosed the accurate date the rescission period
expired, in violation of 15 U.S.C. § 1635(a) and Regulation Z §
226.23(b);

l.  Failing to provide a good faith estimate within three (3) days of the
loan application, in violation of Regulation Z §§ 226.17(b) and
226.19(b)(2);

m. Failing to provide the Consumer Handbook on Adjustable Rate
Mortgages, in violation of Regulation Z §§ 226.17(b) and
226.19(b)(1);

8

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

n. Failing to provide a copy of the HUD-1 statement at Closing Date, in violation of Regulation Z § 226.18(c);

o. Failing to clearly, conspicuously and accurately disclose in its advertising the down payment, number of payments or period for payments, amount of payments, and the finance charge, in violation of Regulation Z § 226.24(d);

p. Failing to offer the same interest rate and/or terms of the loan represented and/or promised during the loan application stage as the final consumer transaction terms reflected in the promissory note; and/or

q. Failing to invoice borrower for the mortgage loan which borrower either agreed to or was led to believe would be his/her loan terms.

20. As a proximate result of the aforesaid violations of the Act, Plaintiff detrimentally relied upon such inaccurate disclosures and/or non-disclosures by Defendants and has sustained damages, including but not limited to, paying fees and charges in excess of what she should have paid but for the violations, all in an amount to be proven at trial.

21. As a result of the aforesaid violations of the Act, Defendants are liable to Plaintiff for:

a. Rescission of the transaction;

b. Termination of any security interest in Plaintiff's Property created under the transaction;

c. Return of any money or property given by the Plaintiff to anyone, including Defendants, in connection with this transaction;

d. Statutory damages of $2,000 for disclosure violations;

e. Statutory damages of $2,000 for Defendants' failure to respond properly to Plaintiff's rescission notice;

f. Forfeiture of return of loan proceeds;

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

g. Actual damages in an amount to be determined at trial;

h. Reasonable attorney's fees and costs.

**COUNT II**

**VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT**

**[12 USC § 2601]**

**(BANK 1)**

22. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

23. On information and belief, Defendants are lenders, creditors, mortgage brokers, and/or services, including their agents and employees, who regularly extend federally-insured mortgage loans, HUD-related loans, or loans intended to be sold on the secondary market, intended for the purchase of a one- to four-family residential property, to which the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617, and Regulation X (24 C.F.R. § 3500 *et seq*.) applies.

24. On information and belief, Defendants, and each of them, violated RESPA in one or more of the following ways:

a. Failing to provide the Special Information Booklet explaining the settlement costs within three (3) business days after Plaintiff submitted his/her loan application, pursuant to Regulation X § 3500.6;

b. Failing to provide, in a clear and concise form, a good faith estimate of the amount of settlement charges the borrower is likely to incur at Closing Date within three (3) business days after Plaintiff submitted her loan application, pursuant to Regulation X § 3500.7;

c. Failing to reflect in the good faith estimate the required use of a particular settlement service provider, the costs of such provider, and all necessary disclosures for such provider;

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timotlnv.thurman@trinlaw.com

d. Failing to properly provide, and in a clear and conspicuous form, the HUD-1 settlement statement at or before the Closing Date with all settlement charges related to the transaction, pursuant to Regulation X §§ 3500.8 and 3500.10;

e. Charging a fee for preparation of the settlement statement, escrow account statement, and/or the TILA disclosure statement, pursuant to Regulation X § 3500.12;

f. Failing to disclosure an affiliated business arrangement, pursuant to Regulation X § 3500.15;

g. Giving, providing and/or receiving a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums, pursuant to Regulation X § 3500.14;

h. Charging fees in excess of the reasonable value of goods provided and/or services rendered;

i. Requiring the borrower(s) to deposit funds in escrow in excess of the statutorily permitted amounts;

j. Failing to inform the borrower(s) of defendant's intention to transfer the servicing of the loan and/or failing to inform the borrower(s) of the actual transfer within fifteen (15) days before the effective date of the transfer, pursuant to Regulation X § 3500.17(e);

k. Failing to provide borrower(s) with a mechanism to obtain information about their loan and to correct erroneous information regarding their loan;

l. Failing to properly and timely pay for property taxes, insurance and other charges for which Defendants are collecting within an escrow impound account; and/or

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

m. Failing to adequately and timely respond to borrower(s) qualified written request, pursuant to Regulation X § 3500.21(e).

25.    As a proximate result of the aforesaid violations of the Act, Plaintiff detrimentally relied upon such inaccurate disclosures and/or non-disclosures by Defendants and has sustained damages, including but not limited to, paying fees and charges in excess of what he/she should have paid but for the violations, all in an amount to be proven at trial.

26.    As a result of the aforesaid violations of the Act, Defendants are liable to Plaintiff for:

    a.  Actual damages in an amount to be determined at trial;

    b.  Statutory damages of $1,000;

    c.  Treble damages;

    d.  Reasonable attorney's fees and costs.

## COUNT III

## VIOLATION OF CALIFORNIA FINANCIAL CODE § 4970

## (BANKS 1)

27.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

28.    The mortgage loan which is the subject of this action was a "covered loan" [i.e, a conforming loan pursuant to single-family first mortgage loan established by the Federal National Mortgage Association] and a "consumer loan" as defined in California Financial Code § 4970(b) and (d).

29.    On information and belief, Defendants violated § 4970 *et seq.*, in one or more of the following ways:

    a.  Failing to provide the required disclosure pursuant to § 4973(k);

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

b.  Including a prepayment fee or penalty within the first 36 months after the Closing Date without offering the Plaintiff a choice of another product without a prepayment fee or penalty;

c.  Including a prepayment fee or penalty after the first 36 months after the Closing Date;

d.  Including a negative amortization provision that causes the principal balance to increase;

e.  Including an advance payment of periodic payments from the loan proceeds;

f.  Including a provision which increases the interest rate as a result of a default;

g.  Originating the loan with no reasonable belief that the Plaintiff would be able to make the scheduled payments to repay the obligation;

h.  Encouraging and/or providing Plaintiff with a loan to refinance such that the new loan does not result in any identifiable, financial benefit to the Plaintiff;

i.  Encouraging and/or providing Plaintiff with a loan product that is less favorable that the Plaintiff would ordinarily qualify for based on the current underwriting guidelines, prudently applied, including all available information;

j.  Dividing the loan transaction into separate parts to avoid liability under the statute; and/or

k.  Misrepresenting the terms of the loan transaction to the Plaintiff.

30.   As a proximate result of the aforesaid violations of the Act, Plaintiff has sustained damages, including but not limited to, paying fees and charges in excess of what he/she should have paid but for the violations, all in an amount according to proof at trial.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1   31.    As a result of the aforesaid willful violations of the statute, Defendants

2   are liable to Plaintiff for $15,000 or actual damages determined at trial, (whichever

3   is greater), and reasonable attorney's fees and costs.

4

5                                **COUNT IV**

6                                 **FRAUD**

7                                **(BANK 1)**

8   32.    Plaintiff repeats and realleges each and every allegation contained in

9   the above paragraphs and incorporates the same as though fully set forth at length.

10   33.    Prior to Closing Date, Defendants, through verbal and written

11   communications, falsely and fraudulently represented to Plaintiff that the loan terms

12   were for a fixed rate of 7%.

13   34.    The representations made by Defendants were in fact false. The true

14   facts were that the actual rate was 7% fixed rate for the first five years, and a

15   variable interest rate for the remaining 25 years on the loan.

16   35.    When the Defendants made these representations it knew them to be

17   false, and these representations were made by Defendants with the intent to defraud

18   and deceive Plaintiff and with the intent to induce Plaintiff to act in the manner

19   herein alleged.

20   36.    Plaintiff, at the time these representations were made by Defendants

21   and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of

22   Defendants' representations and believed them to be true.

23   37.    In reliance on these representations, Plaintiff was induced to and did

24   enter into the mortgage loan transaction with Defendants.

25   38.    Had Plaintiff known the actual facts, Plaintiff would not have taken

26   such action.

27   39.    Plaintiff's reliance on Defendant's representations was justified because

28   Plaintiff is not in the business of mortgage lending and reasonably relied upon

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262: timothy.thurman@trinlaw.com

14

Defendants to fully inform and disclose to Plaintiff the true nature of the terms of the loan as more fully described above.

40.    As a proximate result of Defendant's fraud and deceit, and the facts herein alleged, Plaintiff has been damaged in an amount to be proven at trial and is also entitled to restitution and/or rescission (pursuant to Cal. Civil Code § 1688 *et seq.*) of the transaction which is the subjects of this action.

41.    In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive damages in an amount to be proven at trial.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

## COUNT V
## BREACH OF CONTRACT
## (BANK 1)

42.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

43.    Plaintiff entered into a written agreement with BANK for a mortgage loan, a copy of which is attached as Exhibit A.

44.    On information and belief, BANK breached the agreement by, among other things, by not clearly indicating the interest rate that will be charged.

45.    Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the contract.

46.    As a proximate result of the aforesaid breach of contract, BANK is liable to Plaintiff for actual and compensatory damages according to proof at trial, attorney's fees and costs.

///

///

///

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

## COUNT VI

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

## (BANK 1)

47.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

48.    On information and belief Plaintiff alleges that at all times mentioned herein there existed between Plaintiff and Defendants, and each of them, either a direct or implied contractual covenant of good faith and fair dealing requiring Defendants and each of them to safeguard, protect or otherwise care for the assets and/or rights of the Plaintiff.  Said covenants prohibited them from activities interfering with or contrary to the rights of the Plaintiff.

49.    On information and belief, Plaintiff alleges that any attempt to foreclose upon the property lawfully belonging to Plaintiff without production of documents demonstrating the lawful rights for said foreclosure would constitute a breach of the said covenant of good faith and fair dealing.

50.    As a direct and legal result of said acts by Defendants, and each of them, Plaintiff alleges that she has been damaged legally and proximately in amounts according to proof at time of trial.

## COUNT VII

## VIOLATION OF CALIFORNIA CIVIL CODE § 2923.6

## (BANK 1)

51.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

52.    Pursuant to California Civil Code § 2923.6, a loan servicer "acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

1    modification or workout plan exceeds the anticipated recovery through foreclosure

2    on a net present value basis."

3        53.    Plaintiff previously submitted a request for a loan modification, but was

4    denied by BANK 1.

5        54.    A loan modification would be in the best interest of all parties in this

6    case because Plaintiff is currently in default and the recovery under a loan

7    modification or workout plan would exceed the anticipated recovery through

8    foreclosure.

9        55.    As a result of the aforementioned violations by Defendants, Plaintiff

10    has been damaged in an amount according to proof at trial, including but not limited

11    to, attorney's fees and costs.

12        56.    Plaintiff also seeks, in addition to other remedies sought in this

13    Complaint, an order from the Court modifying Plaintiff's loan and/or directing that

14    BANK 1 modify Plaintiff's loan by one or more of the following methods: reduction

15    of principal, reduction of interest rate, alteration of the term of the loan, and/or such

16    other method as the Court deems just and proper.

17

18                   **COUNT VIII**

19       **VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5**

20                  **(BANKS 1)**

21        57.    Plaintiff repeats and realleges each and every allegation contained in

22    the above paragraphs and incorporates the same as though fully set forth at length.

23        58.    Plaintiff's loan was obtained between January 1, 2003 and December

24    31, 2007.

25        59.    The California Legislature has declared that it is their intent to impose

26    additional requirements on mortgagees, trustees, beneficiaries and/or their

27    authorized agents prior to instituting the foreclosure process. This includes making,

28

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1 | or attempting with due diligence to make, contact with the borrower(s) prior to

2 | issuing any Notice of Default ("NOD") as specified in the statute.

3 |      60.    Defendants issued a NOD to Plaintiff on or about April 9, 2009.

4 |      61.    On information and belief, Defendants violated § 2923.5 in one or more

5 | of the following ways:

6 |     a. Failing to do one or more of the following at least thirty (30) days

7 |        prior to issuing the NOD:

8 |         i. Contact the borrower in person or by telephone in order

9 |           assess the borrower's financial situation and explore options

10 |           for the borrower to avoid foreclosure;

11 |        ii. Advise the borrower during the initial meeting that he/she has

12 |          the right to request a subsequent meeting and, if requested,

13 |          schedule such meeting within fourteen (14) days thereafter;

14 |       iii. Provide the borrower with a toll-free telephone number to

15 |          find a HUD-certified housing counseling agency;

16 |     b. Failing to include a declaration with the NOD that:

17 |        i. The borrower(s) was/were contacted; or

18 |        ii. The lender tried with due diligence to contact the borrower(s),

19 |          including:

20 |          1. Sending a first-class letter that includes a toll-free

21 |             telephone number make available by HUD to find a

22 |             HUD-certified housing counseling agency;

23 |          2. After the letter is sent, attempting to contact the

24 |             borrower by telephone at least three times at different

25 |             hours and on different days;

26 |          3. If no response, sending a certified letter with return

27 |             receipt requested;

28 |

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262; timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

4. Providing a means for the borrower to contact lender in a timely manner, including a toll-free telephone number that provides access to a live representative during business hours;

5. Posting a prominent link on the homepage of lender's website to options for the borrower to avoid foreclosure, a list of financial documents needed to discuss options to avoid disclosure, a toll-free number for borrowers to call to discuss options to avoid disclosure, and a toll-free number to a HUD-certified housing counseling agency; or

   iii. The borrower has surrendered the property to the mortgagee, trustee, beneficiary or authorized agent.

62.    As a result of the aforementioned violations by Defendants, Plaintiff has been damaged in an amount according to proof at trial, including but not limited to, attorney's fees and costs.

63.    As a result of the aforementioned violations by Defendants, Plaintiff also seeks a declaration and/or order from the Court that the institution of foreclosure proceedings upon the Property is null and void unless and until Defendants meet the requirements of § 2923.5.

## COUNT IX
## VIOLATION OF UNRUH CIVIL RIGHTS ACT
## CAL. CIVIL CODE § 51
## (BANK 1)

64.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

PLAINTIFF'S COMPLAINT FOR DAMAGES

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

65.    On information and belief, the conduct of Defendants violated California Civil Code § 51 in that Defendants discriminated against, boycotted, or blacklisted, refused to lend to, contract with, or refinance, or offered significantly less worthy credit to the Plaintiff based on her race, color, religion, ancestry, and national origin.

66.    As a direct and legal result of Defendants' violation of Civil Code § 51 and other state constitutional rights, Plaintiff suffered violations of her civil rights.

67.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered incidental and consequential damages and losses, all in an amount to be proven at time of trial. Plaintiff claims such amount as damages together with prejudgment interest pursuant to Civil Code § 3287 and any other provision of law providing for prejudgment interest.

68.    As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's damage in an amount to be proven at time of trial.

69.    As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

70.    The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants, and each of them. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

71.    By virtue of the provisions of Civil Code § 52.1, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

# COUNT X

## VIOLATION OF CIVIL RIGHTS ACT OF 1991

### [42 USC § 1981]

### (BANK 1)

72.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

73.    This cause of action is brought pursuant to 42 U.S.C. § 1981, *et seq.*, which provides that all persons in the United States have the same right to make and enforce contracts.

74.    Plaintiff is informed and believes, and thereupon alleges that Defendants, and each of them, loaned Plaintiff an amount that was unreasonable according to her employment and income and were careless in taking her loan application into consideration.

75.    Plaintiff seeks full compensation for the discriminatory acts she has suffered.

76.    Plaintiff seeks an injunction to prohibit Defendants from engaging in the unfair and discriminatory business practices complained of herein.

77.    The acts complained of herein occurred, at least in part, within the last year preceding the filing of the complaint in this action.

78.    The above actions were conducted under color of state law in that Defendants, as Banks, are entangled with the Federal government, in that the BANKS Defendants are heavily regulated by the Federal government, the Federal government loans the BANKS money, and Plaintiff is informed and believes, these Defendants have received aid from the Federal government.

79.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262: timothv.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd, Suite 930
Los Angeles, California 90010
Tel: (213) 928-7338. Fax: (213) 402-3262: timothy.thurman@trinlaw.com

80.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

81.     The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

## COUNT XI
## VIOLATION OF CIVIL RIGHTS ACT OF 1871
### [42 USC § 1983]
### (BANK 1)

82.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

83.     This cause of action is brought pursuant to 42 U.S.C. § 1983, which provides that every person who subjects any citizen of the United States to a deprivation of his or her civil rights is subject to penalty.

84.     The above actions were conducted under color of state law in that Defendants, as Banks, are entangled with the Federal government, in that the BANKS Defendants are heavily regulated by the Federal government, the Federal government loans the BANKS money, and Plaintiff is informed and believes, these Defendants have received aid from the Federal government.

85.     As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

86.     As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

87.     The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

## COUNT XII

## VIOLATION OF TITLE VI OF CIVIL RIGHTS ACT OF 1964

## [42 USC § 2000d]

## (BANK 1)

88.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

89.     This cause of action is brought pursuant to 42 U.S.C. § 2000d, which provides that "no person in the United States shall, on the ground of race, color, gender or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

90.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned Defendants have engaged in practices that are unlawful under 42 U.S.C. § 2000d, including but not limited to providing an exorbitant loan amount to Plaintiff, with a limited and/or inconsistent income, from a minority background, with no prior home buying experience, and/or offering a loan to Plaintiff that is significantly more costly than those offered to others of a different race, ethnicity or national origin.

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

91.    The Defendants preyed upon this minority, and with reckless disregard to how Plaintiff could make payments without default, provided Plaintiff with a higher cost loan that she should have never qualified for, therefore getting him/her into a deep financial mess which she may not have ever been in had the Defendants done ample due diligence and concluded that she should not qualify for such financing on such loan amount.

92.    The above actions were conducted under color of state law in that Defendants, as Banks, are entangled with the Federal government, in that the BANKS Defendants are heavily regulated by the Federal government, the Federal government loans the BANKS money, and Plaintiff is informed and believes, these Defendants have received aid from the Federal government.

93:    Plaintiff seeks full compensation for the discriminatory acts he/she has suffered.

94.    Plaintiff seeks an injunction to prohibit Defendants from engaging in the discriminatory practices complained of herein.

95.    The acts complained of herein occurred, at least in part, within the last year preceding the filing of the complaint in this action.

96.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

97.    As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

98.    The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in

1  an amount appropriate to punish and make an example of Defendants, and in an

2  amount to conform to proof.

3

4                              **COUNT XIII**

5          **VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT**

6                          **[15 U.S.C. § 1691]**

7                              **(BANK 1)**

8          99.    Plaintiff repeats and realleges each and every allegation contained in

9  the above paragraphs and incorporates the same as though fully set forth at length.

10         100.   This cause of action is brought pursuant to 15 U.S.C. § 1691, which

11  makes it unlawful for any creditor to discriminate against any applicant, with respect

12  to any aspect of a credit transaction, on the basis of race, color, religion, national

13  origin, sex, marital status, or age.

14         101.   Plaintiff is informed and believes and based thereon alleges that at all

15  times herein mentioned Defendants have engaged in practices that are unlawful

16  under the Act, including but not limited to providing an exorbitant loan amount to

17  Plaintiff, with a limited and/or inconsistent income, from a minority background,

18  with no prior home buying experience, and/or offering a loan to Plaintiff that is

19  significantly more costly than those offered to others of a different race, ethnicity or

20  national origin.

21         102.   The Defendants preyed upon this minority, and with reckless disregard

22  to how Plaintiff could make payments without default, provided Plaintiff with a

23  higher cost loan that she should have never qualified for, therefore getting him/her

24  into a deep financial mess which she may not have ever been in had the Defendants

25  done ample due diligence and concluded that she should not qualify for such

26  financing on such loan amount.

27         103.   Plaintiff seeks full compensation for the discriminatory acts she has

28  suffered.

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

104.    As a direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff suffered and will continue to suffer humiliation, shame, despair, embarrassment, depression, and mental pain and anguish, all to Plaintiff's in an amount to be proven at time of trial.

105.    As a further direct, foreseeable, and proximate result of said wrongful acts by Defendants, Plaintiff has incurred attorneys' fees in an amount to be determined, for which Plaintiff claims a sum to be established according to proof.

106.    The conduct of Defendants and their agents and employees as described herein was oppressive, fraudulent and malicious, done in conscious disregard of Plaintiff's rights, and done by managerial employees of Defendants. Plaintiff is thereby entitled to an award of punitive damages against Defendants, in an amount appropriate to punish and make an example of Defendants, and in an amount to conform to proof.

## COUNT XIV
## VIOLATION OF CALIFORNIA BUSINESS AND
## PROFESSIONS CODE §§ 17200 AND 17500
## (BANK 1)

107.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs and incorporates the same as though fully set forth at length.

108.    The Unfair Competition Law and Unfair Business Practices Act, codified in Business & Professional Code §§ 17200 and 17500 *et. seq*., provides that unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

109.    On information and belief, Defendant's acts or practices of failing to accurately and adequately disclose the true loan terms, failing to provide Plaintiff with the necessary disclosures and documents, violating anti-predatory lending

1  statutes requiring such disclosures, etc., all as previously alleged within this

2  Complaint, was and is illegal, unfair, fraudulent and/or deceptive.

3      110.   By committing the acts and practices alleged herein, Defendants have

4  been and continue to be engaged in illegal, unfair and/or deceptive business

5  practices within the meaning of the Business & Professions Code §§ 17200 and

6  17500 *et. seq.*

7      111.   Plaintiff has been injured in fact and has lost money and property as a

8  result of Defendants' unfair business practices as alleged throughout this Complaint.

9      112.   Defendants, through their acts of illegal, unfair or deceptive business

10  practices, have obtained a value as a direct result of their scheme.

11      113.   Plaintiff requests that the Court grant relief by way of restitution by

12  ordering that the Defendants return any direct or indirect gains to the Plaintiff and to

13  enjoin Defendants from continuing to violate the Business & Professional Code by

14  such conduct in the future.

15      114.   Plaintiff also respectfully requests an award of attorneys' fees, costs and

16  expenses against Defendants.

17

18                              **COUNT XV**

19                             **QUIET TITLE**

20            **(ALL DEFENDANTS KNOWN OR UNKNOWN AND**

21             **CLAIMING ANY INTEREST IN THE PROPERTY)**

22      115.   Plaintiff repeats and realleges paragraphs 1 through 111 and, upon

23  information and belief, incorporates the same as though fully set forth at length.

24      116.   Plaintiff is at all times herein mentioned the owner and/or entitled to

25  possession of the Property.

26      117.   Plaintiff is informed and believes and thereupon alleges that

27  Defendants, and each of them, claim an interest in the Property adverse to Plaintiff.

28  However, as a result of the conduct more fully described in the preceding

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothv.thurman@trinlaw.com

1  allegations, the claim of Defendants is without any right whatsoever, and said

2  Defendants have no legal or equitable right, claim, or interest in the Property.

3      118.   Plaintiff therefore seeks a declaration that the title to the subject

4  Property is vested in Plaintiff alone and that the Defendants herein, and each of

5  them, be declared to have no estate, right, title or interest in the Property and that

6  said Defendants, and each of them, be forever enjoined from asserting any estate,

7  right, title or interest in the Property adverse to Plaintiff.

8

9                          **COUNT XVI**

10                        **DECLARATORY RELIEF**

11                           (BANK 1)

12      119.   Plaintiff repeats and realleges each and every allegation contained in

13  the above paragraphs and incorporates the same as though fully set forth at length.

14      120.   A dispute has arisen between and among the Plaintiff and the

15  Defendants herein, and each of them, as to the duties and obligations of the

16  respective parties with regard to the mortgage loan transactions and/or foreclosure

17  proceedings.

18      121.   These disputes concern, but are not necessarily limited to, the rights

19  and duties of the parties under the promissory note between them, the various

20  statutes at issue in this litigation, the ownership to the Property, and/or the right of

21  Defendants to foreclose on the Property.

22      122.   As these questions concern issues with regard to Plaintiff's Property,

23  she is thus required to seek this relief.

24      123.   Plaintiff further alleges that a declaration of rights and duties of the

25  parties herein by the Court is essential to determine the actual status and validity of

26  the mortgage loan transaction and any rights duties and/or obligations as to the

27  enforcement of it.

28

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338; Fax: (213) 402 3262: timothy.thurman@trinlaw.com

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

124.   Plaintiff has exhausted any and all applicable administrative remedies required under the law and for which notice has been provided to Plaintiff.

### REQUEST FOR JURY TRIAL

125.   Plaintiff hereby requests a trial by a jury of her peers.

### PRAYER

**WHEREFORE,** Plaintiff prays for damages and other relief as follows:

1.   Rescission of the mortgage loan transaction(s) which are the subject of this action;

2.   Termination of any security interest in Plaintiff's Property created under the transaction(s);

3.   Return of any money or property given by the Plaintiff to anyone, including Defendants, in connection with this transaction;

4.   Compensatory and/or actual damages according to proof;

5.   A judicial declaration of the rights, duties and/or obligations of the parties hereto;

6.   Statutory damages;

7.   Restitution;

8.   Punitive damages;

9.   An appropriate declaration and/or order consistent with California Civil Code §§ 2923.5 and/or 2923.6;

10.   Injunctive relief including the immediate issuance of a preliminary restraining order, and thereafter a temporary or permanent injunction to maintain the status quo pending adjudication;

11.   Personal injury damages, including but not limited to, mental anguish and/or emotional distress

12.   Attorneys' fees according to statute;

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

1    13.    Costs of this suit; and

2    14.    Such other and further relief as this court shall deem fair equitable and

3           just.

4

5    DATED: April 24, 2009                    TRINITY LAW ASSOCIATES

6

7                                    By: _____

8                                        Timothy D. Thurman, Esq.
                                         Attorneys for Plaintiff, KIMBERLY CHOI
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

**TRINITY LAW ASSOCIATES**
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

## VERIFICATION OF QUIET TITLE CAUSE OF ACTION

I, _KIMBERLY CHOI_, am a plaintiff in the above-entitled action. I have read the foregoing Count for Quiet Title and know the contents thereof. The same is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Los Angeles, California on this day, _4/24/09_, 2009.

_Kimm Cho_

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

TRINITY LAW ASSOCIATES
3470 Wilshire Blvd., Suite 930
Los Angeles, California 90010
Tel: (213) 928 7338: Fax: (213) 402 3262: timothy.thurman@trinlaw.com

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY PERIOD

### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### ( 10  Year Interest Only Period)

Loan #    125281386

MIN: 100055401252813862

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 28, 2007                    IRVINE                    California
[Date]                               [City]                    [State]

1637 WEST 226TH STREET, TORRANCE AREA, LOS ANGELES, CA 90501

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    560,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.000    %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on    May 1, 2007 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on    April 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    INDYMAC BANK, F.S.B., P.O. BOX 78826, PHOENIX, AZ 85062-8826
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $    3,266.67 . This amount may change in accordance with subsection (C) below.

---

**IndyMac Bank**
**Fixed/Adjustable Rate Note - 1 Yr. Libor Index - Interest Only Period - Multistate**

Initials: _VC_

Form 5600

8480830 (0506)

VMP Mortgage Solutions, Inc. (800)521-7291

6/05

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

The First P&I Payment Due Date is    May 1, 2017    .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of    April, 2012    , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding    two and 750/1000ths    percentage point(s) (    2.750    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than    12.000    % or less than    2.750    %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than    two and NO/1000ths    percentage point(s) (    2.000    %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    12.000    %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

## 11. UNIFORM SECURED NOT

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
KIMBERLY CHOI                  -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower


_____ (Seal)      _____ (Seal)
                               -Borrower                                  -Borrower

*[Sign Original Only]*

Loan No: 125281386

Form 5600
6/05

# ADDENDUM TO ADJUSTABLE RATE NOTE
## (Prepayment)

THIS ADDENDUM is made this 28th day of February, 2007, and is incorporated into and intended to form a part of an Adjustable Rate Note dated the same date as this Addendum.

1.    Section 5 of the Adjustable Rate Note is modified to provide that I have the right to make payments of principal at any time before they are due. A Prepayment of all of the unpaid principal is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first    one    ( 1 ) year(s) I make a Partial Prepayment or Partial Prepayment(s) of less than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will not pay a Prepayment penalty. However, if within the first    one    ( 1 ) year(s), I make a Full Prepayment, Partial Prepayment or Partial Prepayments of more than twenty percent (20%) of the original principal amount in any 12-month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions of the Adjustable Rate Note are unchanged by this Addendum and remain in full force and effect.

Dated:    2/28/07

_____ (Seal)          _____ (Seal)
KIMBERLY CHOI                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                                    -Borrower

IndyMac Bank and Federally Exempted Seller Use Only
Hard Prepayment Addendum (1-3 yrs) - ARM
First Mortgages - Multistate, Arkansas (loans over $150,000)

8480279 (0407)                    VMP Mortgage Solutions, Inc. (800)521-7291

SPD #084
(08/04)

Recording Requested By:
INDYMAC BANK, F.S.B., C/ DOCUMENT
MANAGEMENT
*[Company Name]*

**And When Recorded Mail To:**

INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
BLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*
KANSAS CITY, MO 64131

*[City, State Zip Code]*

_____ *[Space Above This Line For Recording Data]* _____

# DEED OF TRUST

**MIN:** 100055401252813862

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated    February 28, 2007    , together with all Riders to this document.

**(B)** **"Borrower"** is    KIMBERLY CHOI A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

. Borrower is the trustor under this Security Instrument.

**(C)** **"Lender"** is    INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a    Federal Savings Bank    organized and existing under the laws of United States of America    . Lender's address is    155 NORTH LAKE AVENUE, PASADENA, CA 91101

**(D)** **"Trustee"** is    COMMERCE TITLE INSURANCE COMPANY

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Loan No: 125281386



(F)   **"Note"** means the promissory note signed by Borrower and dated   February 28, 2007   . The Note states that Borrower owes Lender five hundred sixty thousand and NO/100ths

Dollars (U.S. $ 560,000.00             )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       April 1, 2037       .

(G)   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

| | | |
|---|---|---|
| [xx] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [xx] 1-4 Family Rider | [ ] Revocable Trust Rider | |
| [ ] Other(s) *[specify]* | | |

(J)   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   **"Escrow Items"** means those items that are described in Section 3.

(N)   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No: 125281386



The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the       County       of   LOS ANGELES       :

    *[Type of Recording Jurisdiction]*       *[Name of Recording Jurisdiction]*

    SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number:    7347-009-024

which currently has the address of                     1637 WEST 226TH STREET
                                                                    *[Street]*

    TORRANCE AREA, LOS ANGELES    , California        90501            ("Property Address"):
                *[City]*                                        *[Zip Code]*

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

Loan No: 125281386



## EXHIBIT "A"

Lot 385 of Tract No. 4529, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 50, Page(s) 64 to 66 inclusive of Maps, in the office of the County Recorder of said County.

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No:  125281386



Case 2:09-cv-02915-AHM-RC   Document 1   Filed 04/27/2009   Page 44 of 62

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds,

Loan No: 125281386



Case 2:09-cv-02915-AHM-RC   Document 1   Filed 04/27/2009   Page 45 of 62

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No: 125281386

obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No: 125281386

Case 2:09-cv-02815-AHM-RC Document 1 Filed 04/27/2009 Page 47 of 62

Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.



**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this

Loan No: 125281386



Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.    Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.**   The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.   If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.   Hazardous Substances.**  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

Loan No: 125281386



**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale. .

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.




BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
KIMBERLY CHOI                                    -Borrower
                                                          *[Printed Name]*

_____ (Seal)
                                                          -Borrower
                                                          *[Printed Name]*

_____ (Seal)
                                                          -Borrower
                                                          *[Printed Name]*

_____ (Seal)
                                                          -Borrower
                                                          *[Printed Name]*

_____ *[Acknowledgment on Following Page]* _____

Loan No: 125281386

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 12 of 13          14301CA 008/00
www.compliancesource.com                                                    © 2000, The Compliance Source, Inc.

State of _____ §
County of ___Orange___ §
§

On _2/28/07_, before me, _Bonnie H. Won, Notary Public_
personally appeared  KIMBERLY CHOI                          *[name and title of officer]*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

BONNIE H. WON
Commission # 1432314
Notary Public - California
Orange County
My Comm. Expires Jul 26, 2007

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California, in book _____, page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____                    Date:_____
(Trustee)

WE HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL
DOCUMENT
TEAM ESCROW INC BY 

Loan No: 125281386

# 1-4 FAMILY RIDER
# (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 28th day of February, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the   "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

1637 WEST 226TH STREET, TORRANCE AREA, LOS ANGELES, CA 90501

*[Property Address]*

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**  In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument:  building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.  All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.  USE OF PROPERTY; COMPLIANCE WITH LAW.**  Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.  SUBORDINATE LIENS.**  Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.  RENT LOSS INSURANCE.**  Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.  "BORROWER'S RIGHT TO REINSTATE" DELETED.**  Section 19 is deleted.

Loan No: 125281386                                                          MIN: 100055401252813862

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3170  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 1 of 3                    14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                          ©2004, The Compliance Source, Inc.



**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.



**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.



_____ (Seal)                    _____ (Seal)
KIMBERLY CHOI               -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                            -Borrower                                          -Borrower


                                                                    *[Sign Original Only]*


Loan No: 125281386

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3170  01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3                    14503MU 08/00 Rev. 11/04
www.compliancesource.com                                                      ©2004, The Compliance Source, Inc.

# FIXED/ADJUSTABLE RATE RIDER
# INTEREST ONLY PERIOD

### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (    10  Year Interest Only Period)

Loan # 125281386                                          MIN:    100055401252813862

THIS ADJUSTABLE RATE RIDER is made this 28th  day of  February,  2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to
INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

1637 WEST 226TH STREET, TORRANCE AREA, LOS ANGELES, CA 90501

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of           7.000        %. The Note
provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of     April,  2012         ,
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called a "Change Date."

**IndyMac Bank**
**Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period -
Multistate**

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                                                    percentage point(s) (          2.750          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          12.000          % or less than          2.750          %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two and NO/1000ths                                                                    percentage point(s) (          2.000          %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than          12.000          %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

　　1.  UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

　　　　**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

　　　　If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

　　　　If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

　　2.  AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

　　　　**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of -a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
KIMBERLY CHOI          -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

Loan No: 125281386                       **Form 5601**
**8480831** (0506)          Page 5 of 5               6/05

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV09- 2915 AHM (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| KIMBERLY CHOI, an Individual | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. INDYMAC BANK, F.S.B., a Federally Chartered Savings Bank; and DOES 1-10, inclusive. DEFENDANT(S). | **CV09-02915 AHM (RCX)** |
| | **SUMMONS** |

TO:    DEFENDANT(S):  <u>INDYMAC BANK, F.S.B., a Federally Chartered Savings Bank</u>

       A lawsuit has been filed against you.

       Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  <u>Timothy D. Thurman</u> , whose address is <u>3470 Wilshire Boulevard, Suite 930  Los Angeles, CA  90010</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **APR 2 7 2009** _____

By: _____ **LA'REE HORN**
                     Deputy Clerk
                    (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*